1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

UNITED STATES  DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EIJI KURIHARA, individually, and on behalf
of all others similarly situated,

                Plaintiff,

    v.

BEST BUY CO., INC.,

                Defendant.

_____/

No. C 06-01884 MHP

**MEMORANDUM & ORDER**
**Re: Motion for Class Certification**

      Plaintiff Eiji Kurihara ("plaintiff"), a former employee of defendant Best Buy Co., Inc. ("Best Buy" or "defendant") has brought a putative class action seeking unpaid wages, liquidated damages and other penalties, injunctive and other equitable relief, and attorneys' fees and costs. Plaintiff's complaint asserts causes of action pursuant to Sections 6 and 7 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. sections 206 and 207, California Code of Civil Procedure sections 382 and 1021.5, various provisions of the California Labor Code, and California Business & Professions Code section 17200. Plaintiff alleges that Best Buy subjects retail employees to inspections in order to prevent inventory loss without compensating these employees for the time spent undergoing these security checks. Plaintiff seeks certification of a class consisting of "All persons who are/were employed by Best Buy Co., Inc., in one or more of its California retail stores at any time between March 10, 2002 and the present." Now before the court is plaintiffs' motion for class certification pursuant to Federal Rule of Civil Procedure 23 as to plaintiff's state law claims. After considering the parties' arguments and submissions and for the reasons set forth below, the court rules as follows.

1    BACKGROUND

2    I.      Best Buy's Employee Inspection Policies

3           Best Buy is one of the leading retailers of consumer electronics, home office products,

4    entertainment software, appliances and related services.  Cole Dec., Exh. B, Exh. I at 4.  There are at

5    least 742 Best Buy locations throughout the United States, including at least 80 in California.  Cole

6    Dec., Exh. D.  Each store employs between 80 and 150 retail workers at any given time.  Cole Dec.,

7    Exh. A, Buttlar Dep. at 27:11–23 (hereinafter "Buttlar Dep."); Cole Dec., Exh. E, Holznagel Dep. at

8    20:12–14 (hereinafter "Holznagel Dep.").  Plaintiff alleges that all employees are subject to identical

9    or nearly-identical policies and procedures related to employee inspections.

10          Plaintiff asserts that Best Buy maintains a highly standardized human resources and

11   management structure.  Best Buy's company-wide policies are developed at the company's

12   headquarters in Minneapolis, Minnesota, and communicated down to the retail store level.

13   Holznagel Dep. at 60:10–22.  Among these communications are Best Buy's Standard Operating

14   Procedures ("SOPs"), Cole Dec., Exhs. F–H, and its Employee Handbook, Cole Dec., Exhs. I & J.

15   These documents are available electronically via computer terminals located throughout Best Buy

16   stores, and are printable.  Buttlar Dep. at 30:13–31:13, 33:16–34:3.

17          All Best Buy retail employees and in-store managers receive a copy of the Employee

18   Handbook and must comply with all company policies and rules contained in the handbook.  Buttlar

19   Dep. at 48:2–8; Cole Dec., Exh. J.  Violations of the provisions in the handbook are grounds for

20   discipline, including termination.  Buttlar Dep. at 98:1–5; Holznagel Dep. at 61:2–14, 62:12–21.

21   Plaintiff asserts that Best Buy employees do not know which violations may lead to discipline, or

22   what type of discipline may follow any particular violation.  Buttlar Dep. at 95:20–96:14,

23   98:1–99:10, 102:1–21; Holznagel Dep. at 78:11–18.  However, plaintiff acknowledges that violation

24   of Best Buy's policies related to attendance and punctuality is grounds for termination.  Cole Dec.,

25   Exh. I at 32–33.  According to plaintiff, this forces employees to arrive at work early so that the

26   employee inspections will not cause them to fail to report to their work area on time.

27          Additionally, the handbook states that helping to prevent "shrink," meaning the loss of

28

UNITED STATES DISTRICT COURT
For the Northern District of California

2

inventory, cash or other company property, is the "responsibility of every employee." Id. at 30–31; Buttlar Dep. at 78:2–5; Holznagel Dep. at 75:3–8. Best Buy's methods of preventing theft, including employee inspections, are taught to Best Buy's retail managers through "ongoing employee training, specific policies and procedures and employee awards programs." Cole Dec., Exh. I at 30.

Best Buy's employee inspection policy is one of the company's "Standard Procedures." Cole Dec., Exh. F. The policy provides instructions for managers, who have the authority to conduct the inspections, as well as Loss Prevention Customer Specialists ("LPCS's"), who are posted at every location. Cole Dec., Exh. G; Buttlar Dep. at 65:2–19, 89:10–23, 91:12–18, 92:2–8; Holznagel Dep. at 75:18–25. Plaintiff claims that, because LPCS's are given a variety of security and customer service-related duties, employee inspections must wait until the LPCS's have finished any pending customer service-related duties. Cole Dec., Exh. F, Buttlar Dep. at 104:23–105:6. This, according to plaintiff, creates additional delay in the employee inspection process.

Plaintiff claims that these standards have created a uniform employee inspection policy for Best Buy's California retail employees. Specifically, LPCS's are charged with performing "Inbound Employee Inspections" and "Outbound Employee Inspections" on "all employees entering and exiting the store," including employees leaving the store to take meal breaks. Buttlar Dep. at 112:10–16, Cole Dec., Exhs. F–H. Plaintiffs assert that there are no inconsistencies in the application of the various iterations of this policy. Buttlar Dep. at 94:6–21, 108:4–109:18. In support of this claim of consistency, plaintiff points to a number of sources. Plaintiff primarily relies on the black letter policies set forth in the Employee Handbook and SOPs. Additionally, Best Buy has an "anti-shrink culture," in which every employee has a responsibility to prevent employee theft and employees are given incentives to prevent shrink. Cole Dec., Exh. I at 31. Additionally, Best Buy's Director of Loss Prevention Field Support testified that Best Buy has never directed workers not to conduct employee inspections. Buttlar Dep. at 53:23–54:9, 102:14–21. Best Buy's policies also require that an LPCS or store manager be posted at the store entrance at all times. Cole Dec., Exh. G; Buttlar Dep. at 68–69. Finally, plaintiff asserts that Best Buy's incentives for employee

UNITED STATES DISTRICT COURT
For the Northern District of California

3

UNITED STATES DISTRICT COURT
For the Northern District of California

1   assistance in loss prevention ensure that such policies are consistently applied.  Id. at 56:5–12;

2   Holznagel Dep. at 70:22–71:3.

3

4   II.      Evidence Related to Actual Employee Inspection Practices

5           Contrary to plaintiff's assertions regarding the uniformity of employee inspections,

6   defendants assert that variations among employee experiences preclude class certification.  To begin

7   with, the nature of the inspection depends in part on whether an employee is wearing a jacket or

8   carrying a backpack, purse or other container.  Additionally, although the guidelines state that

9   inspections are to be performed on all employees entering and exiting the store, defendant has

10  submitted declarations from several employees stating that they are not inspected when they enter

11  the store.  Opp. at 3 n.4.  Some outbound employees are only inspected when carrying particular

12  items.  Boldin Dec. ¶5; Tisher Dec. ¶ 5.  Furthermore, the nature of the inspection appears to vary

13  depending on who is performing the inspection.  Although the policies state that LPCS's are not to

14  handle the contents inside employee containers, LPCS's sometimes do handle these contents.  Lewis

15  Dec. ¶ 5; Castellanoz Dec. ¶ 3.  This, according to defendant, establishes that the written policies are

16  not a reliable indicator of the realities concerning employee inspections, since the written policies

17  themselves are not uniformly followed.

18          Furthermore, defendant has submitted evidence indicating that the inspections vary widely in

19  duration and frequency.  Declarations from several LPCS's reveal a wide range of percentages of

20  employees not inspected depending on each declarant, ranging from 25% not inspected to 75% not

21  inspected.  Opp. at 4 n.10.  Further, plaintiff acknowledged that his own experience was that

22  outbound employees were only inspected at the store where he worked if they had jackets, sweaters,

23  coats, backpacks, purses, bags or lunch boxes.  Baltodano Dec., Exh. 1, Kurihara Dep. at 29:20–23,

24  50:15–21, 51:6–11, 53:13–15, 53:21–54:3 (hereinafter "Kurihara Dep.").

25          Defendant further claims that inspections fluctuate from day to day depending on whether the

26  management at a particular store decides to focus on servicing customers rather than security.  Two

27  declarants have stated that, in the interest of prioritizing customer service, they would often spend

28

only a few seconds inspecting employees. Norell Dec. ¶ 5; Santos Dec. ¶ 3. Defendant asserts that the need for LPCS's to service customers results in them waiving employees through uninspected rather than making them wait. Tisher Dec. ¶ 5.

Additionally, because inspection rates depend on apparel and whether employees are carrying particular items, the frequency of inspections varies based on weather and climate, and depends on how many employees carry the pertinent items. Further, apparently contrary to the written policies, there are times when the LPCS desk is left unattended and no inspections take place at all. Buttlar Dep. at 68:23–69:3; Herrera Dec. ¶ 7. At some stores, meanwhile, inspections are so routine that most employees approach the LPCS desk ready for inspection, thereby decreasing the amount of time spent on each inspection. Brunner Dec. ¶ 6; Jimenez Dec. ¶ 6; Meyerhoff Dec. ¶ 5; Santos Dec. ¶ 3; Satterthwaite Dec. ¶ 5.

Defendant therefore asserts that it is impossible to determine whether, how frequently, and for what length of time any employee is subject to inspection without examining the employee's individual circumstances and considering a host of factors unique to each employee. Plaintiff has admitted that the duration of employee inspections depends on the circumstances, and that in some instances the inspection of his backpack took "no time" at all. Kurihara Dep. at 48:25–50:10, 52:5–10, 37:2–6. Plaintiff also acknowledged that the inspections took longer when performed by personnel other than an LPCS. Id. at 44:11–25.

Further, defendant claims that there is no evidence that employees are disciplined for refusing to submit to inspections. While plaintiff relies on the written policies, there is nothing specific in the policies that supports plaintiff's contention that the inspection policies are tied to an increased threat of discipline. Defendant also denies that uncertainty as to whether a particular violation warrants discipline necessarily leads employees to exercise caution with regard to all policies and procedures. Additionally, defendant asserts that if there were evidence of any employee having been disciplined for failing to submit to an inspection, the discipline would depend on the circumstances of each case. Holznagel Dep. at 61:15–62:2.

Finally, defendant asserts that Best Buy prohibits "off-the-clock" work, and affords

UNITED STATES DISTRICT COURT
For the Northern District of California

1   employees an opportunity to document missing or incorrect time-keeping.  Holznagel Dec., Exhs.

2   A–C.  These "time-edit sheets" are available to all employees, and it is up to each individual

3   employee to have these sheets signed by a manager.  Kurihara Dep. at 32:4–7, 88:7–18, 91:5–9.

4          In sum, defendant claims that, notwithstanding the clarity of its written policies regarding

5   employee inspections, the implementation of those policies (or lack thereof) varies substantially

6   among stores and employees and therefore class certification is not appropriate.

7

8   LEGAL STANDARD

9   I.      Motion for Class Certification

10         A party seeking to certify a class must satisfy the four prerequisites enumerated in Rule

11  23(a), as well as at least one of the requirements of Rule 23(b).  Under Rule 23(a), the party seeking

12  class certification must establish: (1) that the class is so large that joinder of all members is

13  impracticable (i.e., numerosity); (2) that there are one or more questions of law or fact common to

14  the class (i.e., commonality); (3) that the named parties' claims are typical of the class (i.e.,

15  typicality); and (4) that the class representatives will fairly and adequately protect the interests of

16  other members of the class (i.e., adequacy of representation).  Fed. R. Civ. P. 23(a).  In addition to

17  satisfying these prerequisites, parties seeking class certification must show that the action is

18  maintainable under Rule 23(b)(1), (2) or (3).  See Rule 23(b); Amchem Products, Inc. v. Windsor,

19  521 U.S. 591, 614 (1997).  Rule 23(b)(2) permits class actions for declaratory or injunctive relief

20  where the party opposing the class "has acted or refused to act on grounds generally applicable to

21  the class."

22         The party seeking class certification bears the burden of establishing that the requirements of

23  Rules 23(a) and 23(b) have been met.  See Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180,

24  1188 (9th Cir.  2001), amended by 273 F.3d 1266 (9th Cir. 2001); Hanon v. Dataproducts Corp., 976

25  F.2d 497, 508 (9th Cir. 1992).  However, in adjudicating a motion for class certification, the court

26  accepts the allegations in the complaint as true so long as those allegations are sufficiently specific

27  to permit an informed assessment as to whether the requirements of Rule 23 have been satisfied.

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1    See Blackie v. Barrack, 524 F.2d 891, 901 n.17 (9th Cir. 1975).   The merits of the class members'

2    substantive claims are generally irrelevant to this inquiry.  Eisen v. Carlisle & Jacquelin, 417 U.S.

3    156, 177–78 (1974); Moore v. Hughes Helicopters, Inc., 708 F.2d 475, 480 (9th Cir. 1983).

4    However, courts are "at liberty to consider evidence which goes to the requirements of Rule 23 even

5    though the evidence may also relate to the underlying merits of the case," and a court may only

6    certify a class after a "rigorous analysis" as to whether the requirements have been satisfied.  Hanon,

7    976 F.2d at 509 (internal quotations omitted).

8

9    II.    Motion to Strike

10        Plaintiff has moved to strike defendant's expert declarations.  Though a "rigorous

11   examination" of 23(a) factors is required for class certification,  General Tel. Co. of the Southwest v.

12   Falcon, 457 U.S. 147, 161 (1982), the district court is not to inquire into the merits of the suit during

13   the certification process.  Eisen, 417 U.S. at 177.  An evidentiary hearing on class certification is not

14   required,  Bouman v. Block, 940 F.2d 1211, 1232 (9th Cir. 1991), and the court should not weigh

15   conflicting expert evidence.  See, e.g. Caridad v. Metro-North Commuter R.R., 191 F.3d 283,

16   292–93 (2d Cir. 1999).  At this early stage, robust gatekeeping of expert evidence is not required;

17   rather, the court must query only whether expert evidence is "useful in evaluating whether class

18   certification requirements have been met."  Dukes v. Wal-Mart, Inc., 222 F.R.D. 189, 191 (N.D. Cal.

19   2004) (Jenkins, J.).  The requirements of relevance and reliability set forth in Daubert v. Merrell

20   Dow Pharms., Inc., 509 U.S. 579, 597 (1993), serve as useful guideposts but the court retains

21   discretion in determining how to test reliability as well as which expert's testimony is both relevant

22   and reliable.  Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999).  If "the basis of the expert

23   opinion is . . . so flawed that it would be inadmissible as a matter of law[,]" then it should not be

24   considered in determining whether the requirements for class certification have been met.  In re Visa

25   Check/MasterMoney Antitrust Litig., 280 F.3d 124, 135 (2d Cir. 2001).

26

27   DISCUSSION

28

7

Plaintiff seeks certification of a class consisting of all persons who are/were employed by Best Buy Co., Inc. in one or more of its California retail stores at any time between March 10, 2002 and the present.  The court notes that, in fact, plaintiff more particularly defined the class in his complaint as all such persons *who were subjected to uncompensated security checks.*  Plaintiff seeks certification pursuant to Rules 23(b)(2) and 23(b)(3).  Under either provision, plaintiff must first satisfy the requirements of Rule 23(a).

I.      Rule 23(a) Requirements

A party seeking class certification must establish that the numerosity, commonality, typicality and adequacy of representation requirements of Rule 23(a) have been met.  The court addresses each of these requirements below.  As a threshold matter, the party must also demonstrate that an ascertainable class exists.

A.      Certainty

Apart from the explicit requirements of Rule 23(a), "[a]n implied prerequisite to certification is that the class must be sufficiently definite."  Whiteway v. FedEx Kinko's Office & Print Servs., Inc., No. C 05-2320 SBA, 2006 WL 2642528, at *3 (N.D. Cal. Sep. 14, 2006) (Armstrong, J.).  "A class definition should be 'precise, objective, and presently ascertainable,'" though "the class need not be 'so ascertainable that every potential member can be identified at the commencement of the action.'"  O'Connor v. Boeing N. Am., Inc., 184 F.R.D. 311, 319 (C.D. Cal. 1998) (internal quotations omitted).  Defendant asserts that plaintiff has failed to establish a sufficiently definite class to warrant class certification.  Specifically, defendant claims that the class is overbroad in that it includes employees that have not been aggrieved under the law.  See Simon v. Am. Tel. & Tel. Corp., No. CV 99-11641 RSWL, 2001 WL 34135273, at *3 (C.D. Cal. Jan. 26, 2001) (holding that class certification under Rules 23(b)(2) and 23(b)(3) was inappropriate because the proposed class definitions included persons who had not yet been aggrieved).  When rejecting class certification based on overbreadth, however, the problem lies in the court's ability to ascertain the class, not

8

UNITED STATES DISTRICT COURT
For the Northern District of California

whether the putative classmembers have been aggrieved.  See Mateo v. M/S Kiso, 805 F. Supp. 761, 773 (N.D. Cal. 1992) (Jensen, J.) (holding that a class defined by a "radically overbroad" class definition was "so broad as to be unascertainable, and, on that basis alone, un-certifiable").  Plaintiff's proposed class is defined as employees of a particular company within a definite time period.  This class is sufficiently ascertainable.

B.     Numerosity

Pursuant to Rule 23, the class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Plaintiff alleges that the purported class includes at least 16,000 individuals.  Defendant does not directly attack the numerosity of the proposed class, except to argue that the class is insufficiently definite.  Accordingly, plaintiff has satisfied the numerosity requirement.

C.     Commonality

To fulfill the commonality prerequisite of Rule 23(a)(2), plaintiff must establish that there are questions of law or fact common to the class as a whole.  Rule 23(a)(2) does not mandate that each member of the class be identically situated, but only that there be substantial questions of law or fact common to all.  See Harris v. Palm Spring Alpine Estates, Inc., 329 F.2d 909, 914 (9th Cir. 1964).  Individual variation among plaintiffs does not defeat underlying legal commonality, because "the existence of shared legal issues with divergent factual predicates is sufficient" to satisfy Rule 23.  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).

Plaintiff claims that this standard has been met in that the common question of liability—whether Best Buy's employee inspection policy was unlawful and/or interfered with its employees' entitlement to meal and rest periods—is the "dominant issue" in the case.  Additionally, plaintiff asserts that questions of damages, penalties, restitution and injunctive relief can be resolved on a class-wide basis.  Defendant does not appear to specifically dispute the contention that common questions exist.  Rather, defendant claims that individual questions predominate, a separate inquiry

9

that the court addresses below.  Accordingly, the existence of a formal, company-wide policy related to employee inspections that is allegedly applicable and applied to all employees is sufficient to raise common issues of law and fact.

### D.    Typicality

Under Rule 23(a)(3), the claims of the representative plaintiff must be typical of the claims of the class.  To be considered typical for purposes of class certification, the named plaintiff need not have suffered an identical wrong.  See Hanlon, 150 F.3d at 1020.  Rather, the claims of the putative class must be "fairly encompassed by the named plaintiff's claims."  General Tel. Co., 457 U.S. at 156 (internal quotation omitted).  In other words, plaintiff must "bridge [the] gap" between his own claims as an individual and "existence of a class of persons who have suffered the same injury as that individual," by demonstrating that the experience of being a Best Buy employee has more than a tenuous connection to being injured in a legally cognizable manner.  Id. at 157–58.  See also Midpeninsula Citizens for Fair Housing v. ACCO Mgmt. Co., 168 F.R.D. 647, 648–49 (N.D. Cal. 1996) (Whyte, J.) (denying class certification where the class definition necessarily included persons with substantially different experiences from that of the named plaintiff).

Defendant points to a number of purported defects in plaintiff's proposed class definition that, according to defendant, renders the definition impermissibly overbroad.  Because the definition includes *all* California employees of Best Buy, it necessarily includes "salaried-exempt" employees who would not be entitled to relief under the applicable labor laws.  The definition additionally includes employees who have never been inspected at all, employees who have not been inspected during statutory breaks, employees who are not entitled to statutory breaks based on the number of hours worked, employees inspected for a non-compensable *de minimis* amount of time, and employees who have recovered their missing time through the means made available by Best Buy.  Defendant cites data from its expert indicating that 50.3% of employees took lunch breaks of 32 minutes or more, and that 11.8% took 31 minutes.  Ward Dec. ¶ 18 & Table 2.  Defendant's expert also concluded that 53% of employees exited without being inspected, and that 22% experienced

10

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1  outbound inspections lasting less than ten seconds.  Id. ¶ 25 & Table 3.

2      Defendant's evidentiary arguments regarding the actual experiences of Best Buy employees

3  are best directed toward the Rule 23(b)(3) inquiry as to whether common questions predominate

4  over individualized issues.  For the purposes of the typicality requirement, it is sufficient that

5  plaintiff, a former Best Buy employee, has asserted that all Best Buy employees are subject to the

6  challenged practice and procedure.  Accordingly, plaintiff has satisfied the typicality requirement.

7

8      E.    Adequacy

9      Defendant does not address plaintiff's adequacy specifically, except to argue that the

10  experiences of Best Buy employees are varied as a general matter.  Accordingly, to the extent that

11  the other class certification requirements are met, the court finds that plaintiff is an adequate

12  representative.

13

14  II.    Rule 23(b)(2) Requirements

15      In addition to meeting the conditions imposed by Rule 23(a), a party seeking certification of

16  a class under Rule 23(b)(2) also bears the burden of establishing that "the party opposing the class

17  has acted or refused to act on grounds generally applicable to the class, thereby making" injunctive

18  relief appropriate.  Fed. R. Civ. P. 23(b)(2).  Class actions certified under Rule 23(b)(2) are "not

19  limited to actions requesting only injunctive or declaratory relief, but may include cases that also

20  seek monetary damages" where the claim for injunctive relief is the primary claim.  Probe v. State

21  Teachers' Ret. Sys., 780 F.2d 776, 780 (9th Cir. 1986).  Rule 23(b)(2) certification of a class seeking

22  both injunctive relief and damages is proper only where the claim for injunctive relief is the

23  predominant form of relief sought by the class.  See Arnold v. United Artists Theatre Circuit, Inc.,

24  158 F.R.D. 439, 450–51 (N.D. Cal. 1994) (Henderson, J.).  To determine whether the claim for

25  injunctive relief predominates, the court must look to the language of Rule 23(b)(2) in light of the

26  individual circumstances presented in the case as well as the intent of the plaintiff in bringing the

27  suit.  See Molski v. Gleich, 318 F.3d 937, 950 (9th Cir. 2003).

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Plaintiff claims that the "long-standing future impact" of the injunctive relief sought

2    overshadows the claim for monetary damages.  In light of the applicable statute of limitations, the

3    back pay claim would be limited to four years.  Additionally, class certification under Rule 23(b)(2)

4    is available in certain actions seeking punitive damages.  Barefield v. Chevron, U.S.A., Inc., No. C

5    86-2427 THE, 1988 WL 188433, at *3 (N.D. Cal. Dec. 6, 1988) (Henderson, J.).

6    In response, defendant claims that certification pursuant to Rule 23(b)(2) is inappropriate for

7    two reasons.  First, defendant claims that Best Buy prohibits "off the clock" work as a matter of

8    policy, and therefore injunctive relief is unavailable altogether.  This is an argument directed toward

9    the merits of the action which has no place in the class certification inquiry.  Second, defendant

10    claims that, because plaintiff is a former employee, plaintiff's claim for injunctive relief is incidental

11    to his claim for monetary damages.

12    In the employment context, courts routinely deny class certification under Rule 23(b)(2)

13    where the named plaintiff is a former employee and therefore will not benefit from the requested

14    injunctive relief.  See, e.g., Jimenez v. Domino's Pizza, Inc., 238 F.R.D. 241, 250 (C.D. Cal. 2006)

15    (holding that claims for monetary relief predominated where plaintiffs were "former employees and

16    thus an injunction as to Domino's behavior to current employees cannot be Plaintiffs' primary

17    concern"); Lanzarone v. Guardsmark Holdings, Inc., No. CV06-1136 RPLAX, 2006 WL 4393465,

18    at *3 (C.D. Cal. 2006) (holding that "certification cannot be granted under Rule 23(b)(2) because

19    Plaintiff, a former employee, lacks standing to pursue injunctive relief"); Sepulveda v. Wal-Mart

20    Stores, Inc., 237 F.R.D. 229, 245 (C.D. Cal. 2006) (holding that certification under Rule 23(b)(2)

21    was not available where approximately 1,200 out of roughly 2,750 class members, as well as the

22    named plaintiff, were former employees who would "derive no benefit from the injunction").  Here,

23    plaintiff is a former employee, and the proposed class definition explicitly envisions a certain

24    proportion of former employees.  Accordingly, the predominant claims in this action are monetary,

25    and certification under Rule 23(b)(2) is not available.

26

27    III.    Rule 23(b)(3) Requirements

28

UNITED STATES DISTRICT COURT
For the Northern District of California

Class certification pursuant to Rule 23(b)(3) requires the plaintiff to establish that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  The court will address each of these two requirements separately.

A.   Predominance

Plaintiff asserts that common factual issues outweigh individual issues, and that there are no individual legal issues whatsoever.  To the extent that individual factual issues exist, plaintiff argues, they are limited to questions of damages which may be addressed at trial through the use of trial management tools.  Plaintiff has formulated a lengthy list of illustrative common factual and legal issues, many of which focus on Best Buy's policies and practices rather than on the experiences of employees.  Mot. at 19.

Defendant asserts that individualized questions predominate in two respects.  Defendant's principal argument is that individualized inquiries will be necessary to determine whether the time spent by each employee undergoing inspections was *de minimis* and therefore not compensable.  Additionally, defendant claims that individual inquiries are required to determine whether employees who spent compensable amounts of time undergoing inspections recovered their due compensation by submitting time-edit sheets.

Where a plaintiff fails to "present sufficient evidence of a class-wide practice that gives rise to liability," class certification is unavailable.  Cornn v. United Parcel Serv., No. C03-2001 THE, 2005 WL 2072091, at *2 (N.D. Cal. Aug. 26, 2005) (Henderson, J.).  In the context of an unpaid compensation claim, plaintiff must establish that classmembers worked compensable time, i.e., that the time at issue was not *de minimis*.  In determining whether otherwise compensable time is *de minimis*, courts "consider (1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work."

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Lindow v. United States, 738 F.2d 1057, 1063 (9th Cir. 1984).  With regard to the third factor, "the

2   uncertainty of how often employees performed the tasks and of how long a period was required for

3   their performance are . . . relevant"  Id.

4       Plaintiff acknowledges the need to explore the issue of *de minimis* time but invites the court

5   to focus instead on the average length of time taken up by an employee inspection as evidence of the

6   class-wide practice.  Furthermore, plaintiff suggests that *de miminis* time would be compensable so

7   long as the time is spent "subject to the control of the employer."  Plaintiff also disputes that the *de*

8   *minimis* standard is still a viable legal doctrine in employment cases at all, an argument which

9   plaintiff claims will be fully developed at the summary judgment or trial stage of the litigation.

10      Reviewing the numerous cases that the parties have cited in their fierce battle of footnotes,[1]

11  two key themes emerge.  First, courts are comfortable with individualized inquires as to damages,

12  but are decidedly less willing to certify classes where individualized inquiries are necessary to

13  determine liability.  See, e.g., Jimenez, 238 F.R.D. at 253 (certification inappropriate where "the

14  variability goes to whether an individual class member has any claim at all" rather than "individual

15  damage determinations based on the number of hours worked"); Sepulveda, 237 F.R.D. at 249

16  (where defendant was entitled to raise a particular fact-based defense as to each individual class

17  member, "highly individualized" questions of proof predominated); Whiteway, 2006 WL 2642528 at

18  *10 ("class certification is not defeated merely because individualized damage issues may remain");

19  Wang v. Chinese Daily News, Inc., 231 F.R.D. 602, 613 (C.D. Cal. 2005) ("the amount of damages

20  is invariably an individual question and does not defeat class action treatment") (quoting Blackie,

21  524 F.2d at 905); Gutierrez v. Kovacevich "5" Farms, No. CIV-F-04-5515OWWDLB, 2004 WL

22  3745224, at *9 (E.D. Cal. Dec. 2, 2004) ("courts routinely find Rule 23(b)(3)'s predominance

23  requirement satisfied despite the need for individualized damage determinations when the fact of

24  injury is common") (internal quotation omitted); In re Paxil Litig., 212 F.R.D. 539, 551 (C.D. Cal.

25  2003) (Rule 23(b)(3) certification inappropriate in products liability action where individualized

26  issues predominated as to causation); Rodriguez v. Gates, No. CV99-13190GAF(AJWX), 2002 WL

27  1162675, at *11 (C.D. Cal. May 30, 2002) (common questions did not predominate where "there is

28

14

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1   no way to adjudicate the class members' claims on a classwide basis not because damages are

2   individual to each case, but because liability and causation are").  However, the mere existence of

3   individualized liability issues is not sufficient to warrant denial of class certification.  See Dunbar v.

4   Albertson's, Inc., 141 Cal. App. 4th 1422, 1432 (2006) (upholding denial of class certification where

5   "the court's decision was not based on the mere presence of individual liability issues," but "on the

6   *nature* of those issues as shown by defendant's evidence") (emphasis in original).

7          Second, courts' discomfort with individualized liability issues is assuaged in large part where

8   the plaintiff points to a specific company-wide policy or practice that allegedly gives rise to

9   consistent liability.  See, e.g., Lanzarone, 2006 WL 4393465 at *4 (certification inappropriate where

10   "the direct evidence and declarations submitted compel the conclusion that Guardsmark has no

11   policy that violates the law," and therefore "the bulk of the issues that are truly in dispute in this

12   matter are inherently individualized"); Sepulveda, 237 F.R.D. at 247 ("broad employer policies can

13   impact many workers at once and thus suggest a need for class treatment"); Wang 231 F.R.D. at 613

14   (common questions predominated where plaintiffs were "challenging Defendant's *policy* of

15   classifying all reporters and account executives as 'exempt'") (emphasis in original); Sav-on Drug

16   Stores, Inc. v. Superior Court, 34 Cal. 4th 319, 330 (2004) (class certification appropriate where

17   plaintiff alleged a uniform policy under standardized conditions).  Again, however, a mere allegation

18   of a company-wide policy does not compel class certification.  Dunbar, 141 Cal. App. 4th at 1427

19   ("although the evidence of a standardized or uniform policy or practice can support class

20   certification[,] it does not compel class certification").

21          Here, plaintiff has provided substantial evidence of the existence of a company-wide policy

22   whereby employees are subject to inspections, and not compensated for the time spent on those

23   inspections.  This policy forms the bases of the alleged injuries at the center of this action.  Although

24   plaintiff has submitted little or no evidence as to the implementation of that policy, the detailed

25   nature of the policy itself, and the reasonable inferences which can be drawn from them, constitute

26   sufficient evidence to satisfy plaintiff's burden as to the predominance of common questions.

27          Defendant's efforts to undercut Best Buy's inspection policy by peeking at the merits are

28

15

UNITED STATES DISTRICT COURT
For the Northern District of California

1   unpersuasive.  First, defendant's "litigation-driven," selective sampling of employees and other data

2   are insufficient to inject fatal uncertainty into the question of liability.  See Tierno v. Rite Aide

3   Corp., No. C 05-02520 THE, 2006 WL 2535056, at *8 (N.D. Cal. Aug. 31, 2006).  Reviewing the

4   employee declarations, there are striking similarities in the way they are worded.  Indeed, the

5   assertions are practically boilerplate.  The court does not doubt that substantial legal and factual

6   issues exist as to the nature and implementation of Best Buy's inspection policies and practices.  The

7   overarching question of whether this policy results in unlawful undercompensation, however, is

8   common and predominant.

9        Furthermore, defendant's assertions regarding the failure of its employees to properly

10  implement the company's standard policies do not convince the court that substantial variations

11  exist.  Where a plaintiff challenges a well-established company policy, a defendant cannot cite poor

12  management to defend against class certification.

13       Finally, defendant's focus on its asserted *de minimis* defense is a matter of degree rather than

14  kind.  At the bottom of the multi-factor *de minimis* inquiry is the simple question of how many hours

15  were worked.  This is an issue that defendants would be forced to litigate individually regardless of

16  whether common questions of liability predominated.

17       In sum, the individualized inquiries are directed principally toward damages rather than

18  liability.  Defendant's due process interests will be preserved by affording it an opportunity to

19  defend the nature and legality of its company-wide policy, and through individualized analysis

20  related to damages.

21

22       B.    Superiority

23        The final prerequisite for certification of a class under Rule 23(b)(3) requires the plaintiff to

24  show that a class action is superior to other methods available for the adjudication of the parties'

25  dispute. "Where classwide litigation of common issues will reduce litigation costs and promote

26  greater efficiency, a class action may be superior to other methods of litigation." Valentino v.

27  Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996).  In considering whether class action is

28

16

UNITED STATES DISTRICT COURT
For the Northern District of California

1   superior, the court must focus on whether the interests of "efficiency and economy" would be

2   advanced by class treatment.  Zinser, 253 F.3d at 1189 (internal quotations omitted).

3       Plaintiff claims that a class action would be superior to the alternative means, i.e. over

4   16,000 individual actions.  Defendant responds that a class action is not superior because, in light of

5   the purported indefiniteness of the class, individualized determinations of liability would be

6   necessary in any event.  As discussed above, however, individual questions of liability do not

7   predominate.  As to the individualized issues of damages, courts have developed numerous efficient

8   means to resolve such issues, including questionnaires, surveys, representative testimony, and other

9   aggregate analysis.  See Whiteway, 2006 WL 2642528 at *10.  The court finds that this type of

10  approach is superior given the alleged existence of a company-wide policy, the size of the class, and

11  the relatively small amount of each individual claim.  See Gutierrez, 2004 WL 3745224 at *9.

12      In addition to the general superiority inquiry, the parties discuss the availability of alternative

13  administrative remedies.  Plaintiff further claims that a representative action under FLSA § 16(b) or

14  wage claims through the Department of Labor Standards Enforcement are inferior to a class action in

15  this context.  With respect to DLSE actions, plaintiff further notes that such an action would impose

16  a three-year statute of limitations rather than the four-year statute of limitations applicable in a civil

17  action.  Defendant counters that the statute of limitations issue is irrelevant, as the class must be

18  limited to claims arising after August 24, 2004 as discussed below.  Courts have come down on

19  either side of this issue.  Compare Jimenez, 238 F.R.D. at 253–54 (stating that a DLSE hearing "can

20  be a quick procedure . . . and does present a viable alternative" despite "disadvantages inherent" in

21  the proceeding); with Wang, 231 F.R.D. at 614 (rejecting the claim that administrative hearings

22  would be superior to class actions).  The availability of administrative hearings for the relatively

23  small amounts at issue on behalf of each individual class member does not dissuade this court from

24  determining that a class action is superior overall to other forms of relief.

25

26  IV.   Class Period

27      Defendant asserts that, in the event the court grants plaintiff's motion for class certification,

28

17

UNITED STATES DISTRICT COURT
For the Northern District of California

1   the class period should be limited to after August 24, 2004, the effective date of the settlement in a

2   previous lawsuit against Best Buy involving breaks and wages.  McKinnon v. Best Buy, Alameda

3   County Case No. RG 03082294.  Defendant  asserts that the judgment entered by the Alameda

4   Superior Court on May 8, 2006 is res judicata for the purposes of plaintiff's claims prior to August

5   24, 2004.  Plaintiff does not appear to contest this assertion.

6

7   V.      Motion to Strike

8           Since the expert declarations which plaintiff moves to strike have not been used to defeat

9   class certification, the court finds it unnecessary to rule upon the motion and deems it moot..

10

11  CONCLUSION

12          For the foregoing reasons, plaintiff's motion for class certification is GRANTED IN PART

13  and DENIED IN PART.  Plaintiff's motion to certify pursuant to Rule 23(b)(2) is DENIED.

14  Plaintiff's motion to certify pursuant to Rule 23(b)(3) is GRANTED.  The class certified herein is

15  defined as follows:   **All persons who are/were employed by Best Buy Co., Inc., in one or more**

16  **of its California retail stores at any time between August 25, 2004 and the present, and who**

17  **were subjected to uncompensated security checks**.

18

19          IT IS SO ORDERED.

20

21  Dated: August 29, 2007

22                                                    _____

23                                                    MARILYN HALL PATEL
                                                      United States District Court Judge
24                                                    Northern District of California

25

26

27

28

                                                    18

ENDNOTES

1.  In addition to a mountain of exemplary federal cases addressing the requirements of Rule 23 and California authorities discussing class certification in the employment context, the parties have inexplicably cited numerous federal cases which do not involve Rule 23 at all, as well as class action cases from state courts other than California's.   While this court has enjoyed enriching itself as to the varying approaches employed by our neighboring states, the body of case law dealing with the well-constructed framework of Rule 23 is sufficiently robust that the court is comfortable ignoring much of this authority for the purposes of the instant controversy.